NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HORACE GLENN, et al., | : | |
| Petitioners, | : | Civil No. 07-112 (PGS) |
| v. | : | |
| GEORGE HAYMAN, et al., | : | O P I N I O N |
| Respondents. | : | |

APPEARANCES:

HORACE GLENN
#787975A,
FRANK BROWN
DN #2618 / S.B.I. #313363A,
THEODORE CLARK
#822554A,
MICHAEL CORSALE
#0952248,
CRAIG DAVIS
#300715C,
ANTONIO DEJESUS
#543031C,
KEITH GARDNER
#560556C,
RICHARD GIBBS
#232215C,
CARLTON GREENE
#800286C,
RANDY GROWALT
#668706B,
ADAN HERNANDEZ
#818415C,
DAVID HEYBOER
#203026A,
JAMES HOLLEY
#928044A,
WILLIAM JIMINEZ
#502497D,
KENNARD KNOX
#595277B,

JAMES KRIVACSKA
#106128C,
WILFREDO LEE
#956896B,
ANTHONY MARCHITTO
#783650A,
MIGUEL MARQUEZ
#149147C,
LAMONT MATTHEWS
#539141A,
MARK NABERSCHNIG
#358385D,
JEFF PARKER
#857632A,
HOWARD REDD
#854683B,
GEORGE RILEY
#133229B,
ALEXANDER THOMAS
#492839C,
DAVID TUYTJENS
#702189C,
RICHARD WATERMAN
#685962A,
CHARLES WILLIAMS
#408981B,
WALLACE WILLAIMS
#123878B,
PETER SPEZIALE
#816733C,

Plaintiffs Pro Se
Adult Diagnostic & Treatment Center
Avenel, New Jersey 07001,

and

RAMAZAN ZUBERI,
Plaintiff Pro Se
1121 Farm Road
Secaucus, NJ 07094


PETER G. SHERIDAN, District Judge

This matter is before the Court on Petitioner's Motion for

Reconsideration of the Court's Memorandum Order of January 30, 2007

2

(hereinafter "January Order"), in which the Court denied certification of Plaintiffs' putative class, directed the Clerk to assign a separate case number to each Plaintiff and, upon administrative termination of such separate actions on the basis of Plaintiffs' failure to submit proper filing fees or complete applications to proceed in forma pauperis, directed each Plaintiff to submit, within 30 days of the date of entry of the January Order, proper filing fees or complete applications to proceed in forma pauperis, together with his individual amended complaints stating the facts of the wrongs suffered by this particular Plaintiff, and reserved in every Plaintiff the right to move this Court for certification of class(es) or consolidation of actions at a later point if such consolidation or certification becomes warranted. See Docket Entry No. 5.

Plaintiff HORACE GLENN (hereinafter "Glenn") filed his motion for reconsideration of the January Order (hereinafter "Motion") on February 14, 2007.

Having considered the motion pursuant to Fed. R. Civ. P. 78, the Court will deny the Motion.

## STANDARD OF REVIEW

Generally, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) to correct manifest errors of law or fact upon which the judgment was based; (2) to present newly-

3

discovered or previously unavailable evidence; (3) to prevent manifest injustice; and (4) an intervening change in prevailing law. See 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed. 1995); see also Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986)(purpose of motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence). "To support reargument, a moving party must show that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision," and that oversight negatively affected the movant. Assisted Living Associates of Moorestown, L.L.C., v. Moorestown Tp, 996 F. Supp. 409, 442 (D.N.J. 1998). By contrast, mere disagreement with the district court's decision is inappropriate on a motion for reargument, and should be raised through the appellate process. Id. (citing Bermingham v. Sony Corp. of America, Inc., 820 F. Supp. 834, 859 n.8 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994); G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990)). "The Court will only entertain such a motion where the overlooked matters, if considered by the Court, might reasonably have resulted in a different conclusion." Assisted Living, 996 F. Supp. at 442. Accordingly, a district court "has considerable discretion in deciding whether to reopen a case under Rule 59(e)." Edward H. Bohlin, Co. v. Banning Co., Inc., 6 F.3d 350, 355 (5th Cir. 1993).

4

As detailed below, Glenn merely dislikes the current legal regime and this Court's conclusions based on that regime. Therefore, this Court has no reason to grant Glenn's Motion. <u>See</u> <u>Bermingham</u>, 820 F. Supp. at 859.

BACKGROUND

On January 9, 2007, Plaintiffs' complaint (hereinafter "Complaint") was submitted to this Court. The Complaint, as drafted, was in clear violation of Fed. R. Civ. P. 8. This rule requires "simple, concise, and direct" pleading of a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a), (e). Plaintiffs' Complaint amounted to 225 pages, 436 paragraphs, 12 causes of action and 38 "prayers for relief," none of which clearly traced a cause of action.[1] Though its language was clear enough, its many irrelevancies and diversions made it a case where "length and complexity may doom a complaint by obfuscating the claim's essence." <u>Garst v. Lockheed-Martin Corp.</u>, 328 F.3d 374, 378 (7th Cir. 2003), <u>see</u> <u>In re Westinghouse Sec. Litig.</u>, 90 F.3d 696, 703 (3d Cir. 1996) (a complaint of more than 600 paragraphs and 240 pages was unduly long); <u>Dattola v. National Treasury Employees</u>

---

[1]

The Court finds it somewhat hard to reconcile the size of Plaintiffs' Complaint with Glenn's claim that the Complaint was drafted the way it is "for the sake of brevity." <u>See</u> Docket Entry No. 7-4, at 16.

5

<u>Union</u>, 86 F.R.D. 496 (W.D. Pa. 1980) (a pro se complaint charging over one-hundred defendants with several claims was unduly confusing). The Complaint abrogated the purpose of the "short and plain statement" requirement "to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>see</u> <u>also</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002). In sum, the Complaint failed to comply with the Rule 8(a) "require[ment that] parties . . . make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud."[2] <u>Garst</u>, 328 F.3d at 378; <u>see</u> <u>also</u>, <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993) (procedural rules in civil litigation should not be interpreted so as to excuse mistakes by those who proceed without counsel); <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u> , 507 U.S. 163, 168 (1993) (same); <u>Salahuddin v. Cuomo</u> , 861 F.2d 40, 42 (2d Cir. 1988) (affirming dismissal of <u>pro</u> <u>se</u> civil rights complaint naming numerous defendants, setting forth numerous causes of action, and numbering fifteen pages and eighty-eight paragraphs); <u>Burks v. City of Philadelphia</u> , 904 F. Supp. 421, 424 (E.D. Pa. 1995) (pleading which represented a "gross departure from the letter and the spirit

---

[2]

An order to amend Plaintiffs' Complaint was disposed of as unnecessary in view this Court's January Order directing each individual Plaintiff to submit that Plaintiff's own amended complaint "stating specific facts in support of such Plaintiff's individual claims." <u>See</u> Docket Entry No. 5, at 20-21.

of Rule 8(a)(2)" in failing to contain a short and plain statement
of claims struck by District Court).

Moreover, this unduly lengthy and convoluted Complaint, was
submitted by Plaintiffs as self-designated representatives of a
putative class consisting of themselves and others whom Plaintiffs
defined as all those similarly situated, see Docket Entry No. 1, at
41-42 (alleging that the "number of members of the class . . . is
approximately 650 individuals"), and further subdivided into five
putative subclasses of (a) "those . . . who were committed to
'institutional confinement' under Title 2A:164-1"; (b) "those . .
. who were committed to 'institutional confinement' under Title
2D:47-3 without . . . parole ineligibility or mandatory minimum
sentence, or . . . completed the[ir] . . . sentence"; (c) "those .
. . who were committed to 'institutional confinement' under Title
2D:47-3 prior to enactment of P.L. 1998, c. 72"; (d) "those .. .
who were sentenced pursuant to P.L. 1998, c. 72"; and "those . . .
who are Hispanic and . . . speak limited or no English." See id.
at 6-7.   While these subclasses indicated in the Complaint
specified named Plaintiffs allocated to each subclass (having
twenty-two Plaintiffs as a maximum number of Plaintiffs in a
subclass, and one Plaintiff as a minimum number of Plaintiffs in a
subclass), the Complaint was silent as to whether any of the
unnamed Plaintiffs from the pool of 650 was allocated to any
subclass.    See Docket Entry No. 1, at 25-28.

In view of these shortcomings, this Court (1) examined Plaintiffs' Complaint through the prism of the requirements of Federal Rule of Civil Procedure 23, as clarified in Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-14 (1997), Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 183-84 (3d Cir. 2001), and Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 168-69 (3d Cir. 2001); (2) concluded that, for the purposes of the instant case, certification of Plaintiffs' putative class of 650 should be denied with prejudice for failure to meet the typicality, adequacy, predominance and superiority requirements; (3) decided that certification of Plaintiffs' putative subclasses of twenty-two to one should be denied without prejudice for failure to assert facts indicating that the numerosity requirement was met;[3] and (4) reserved in Plaintiffs the opportunity to move for consolidation of actions or class certification of appropriate classes at a later date after the actionable claims would be fleshed out from the submissions of Plaintiffs' individual amended complaints. See Docket Entry No. 5, at 18-22. Since the above-listed shortcomings of Plaintiffs' Complaint provided sufficient basis to the Court's decision, the Court did not need to reach any other issues related to certification of Plaintiff's putative class or subclasses.

---

[3]

The reader's familiarity with the legal rationale employed the January Order is presumed and requires no reiteration in the instant Opinion.

On February 14, 2007, Glenn submitted his Motion acting as a self-designated "lead plaintiff" representing the rest of the named and unnamed Plaintiffs. To match Plaintiffs' Complaint, Glenn's Motion consisted of 18 pages and was accompanied by a 12 page affidavit in which Glenn informed this Court that he was "the current[] elected chairman of the [Inmate Resident Committee, known as] IRC." See Docket Entry No. 7-3, at 2, and "[a]t its November 17, 2006 meeting[,] the IRC adopted a[] resolution authorizing the IRC Legal Subcommittee to file [t]he Complaint naming the members of the IRC . . . as [lead] Plaintiffs."[4] Id., at 3.

The Motion prompted this Court to reconsider the January Order with respect to denial to certify Plaintiffs' putative class of 650, and offered the following four arguments (in addition to reiterating those made in the Complaint) in support of reconsideration. First, Glenn asserted that, although Plaintiffs sought monetary damages, the determination of the damages due to each individual Plaintiff should not require a separate proceeding since Plaintiffs intend to divvy the monetary award pursuant to a formulaic distribution scheme prepared by Glenn (and, perhaps, other named Plaintiffs). See Docket Entry 7-4, at 6-10. Second, Glenn alleges that all Plaintiffs' injuries are identical, and this Court's conclusion to the contrary was erroneous because (1) the

---

[4]

Short of this piece of information, Glenn's affidavit effectively recites the points made in Glenn's Motion. Compare Docket Entry No. 7-3 to Docket Entry No. 7-4.

Court understood the phrase "class members [were] rendered impotent" imbedded in an eighty-three word sentence literally, while, in actuality, no Plaintiff was rendered impotent by the actions of Defendants, but rather Plaintiffs employed poetic license by describing the administrative programs underlying the treatment Plaintiffs are receiving as "impotent"; and (2) lack of injurious impotence among Plaintiffs vitiates the key distinction in the wrongs suffered by Plaintiffs. See Docket Entry No. 7-3, at 5-6. Third, Glenn maintains that the obvious distinction between the "claims [of] all class members" and claims of certain Plaintiffs, e.g., Hispanics, should be cured by allowing Plaintiffs to amend their Complaint so to eliminate the claims unique to certain Plaintiffs. See Docket Entry 7-4, at 17. Finally, Glenn alleges that all Plaintiffs currently residing at the facility of their confinement (hereinafter "Avenel") are criminally committed, and this fact (1) makes the legal tests applicable to the claims of the entire putative class uniform, and (2) warrants certification. See id., 6, 10.

As the following discussion clarifies, the statements made in Glenn's Motion give this Court additional reasons to deny certification of Plaintiffs' putative class of 650.

10

DISCUSSION

A.   <u>Certification of Plaintiffs' Putative Class Is Unwarranted</u>

In addition to all issues discussed in this Court's January Order, the statements made in Plaintiffs' Complaint and Glenn's Motion and Affidavit indicate Plaintiffs' putative class does not warrant certification.

First, there are general considerations cautioning against class certification of inmates.   It is well known that group applications are rife with potential problems.   <u>See</u>, <u>e.g.</u>, <u>Lindell v. Litscher</u>, 212 F. Supp. 2d 936   (W.D. Wis. Mar. 8, 2004).

> The court has only limited ability to monitor the prosecution of the complaint to insure, for example, that each plaintiff receives a copy of each document or pleading submitted to the court and approves the submission or that each plaintiff is capable of understanding the submissions made on his behalf.   In this case, it is extremely unlikely that each [plaintiff] has seen a copy of the group complaint, considering its length and the expense that photocopying it would have involved.   This makes it impossible to know whether each plaintiff even knows what is being advanced on his behalf.   In these circumstances, there is no way to protect the interests of each plaintiff.   .   .   .   It is rare, however, that all of the claims in any complaint are common to every one of the named [plaintiffs].   The complaint in this case is an example of such a pleading. Petitioners allege several claims concerning the physical conditions at the . . . Facility that are common to each of them, but only [one] petitioner . . . alleges that he was deprived of his [equal protection rights].   Requiring separate complaints encourages each [plaintiff] to limit his complaint to the claims that are specific to him. The effect is conservation of judicial resources.

<u>Boriboune v. Berge</u>, 2004 U.S. Dist. LEXIS 3926, at *4-7 (W.D. Wis. Mar. 8, 2004), <u>remanded on other grounds</u>, <u>Boriboune v. Berge</u>, 60

11

Fed. R. Serv. 3d (Callaghan) 417 (7th Cir. Wis. 2004) (finding that there was no irreconcilable conflict between Rule 20 and 28 U.S.C. § 1915 of the PLRA); accord Boriboune v. Berge, 2005 U.S. Dist. LEXIS 1165 (W.D. Wis. Jan. 12, 2005) (advising each of the inmates that they would be held legally responsible for knowing precisely what was being filed in the case on their behalf and would be subject to sanctions under Fed. R. Civ. P. 11 if such sanctions were found warranted in any aspect of the case); see also Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. N.C. 1975) (class actions by prisoners are impractical since each plaintiff must be notified separately of court documents, orders, and deadlines); Wasko v. Allen County Jail, 2006 U.S. Dist. LEXIS 22907 (N.D. Ind. April 12, 2006) (finding impracticalities inherent to multi-prisoner litigation); Swenson v. MacDonald, 2006 U.S. Dist. LEXIS 5784 (D. Mont. Jan. 30, 2006) (same); Thomas E. Willging, Laural L. Hooper, Robert J. Niemic, Class Actions and the Rulemaking Process: An Empirical Analysis of Rule 23 to Address the Rulemaking Challenges, 71 N.Y.U.L. Rev. 74, 96 (May 1996) (assessing "the average amount of time required for the average class actions" and concluding that "class actions required [for a resolution of] prisoner civil rights cases" filed as a class action is 5.03 times more than the time required for resolution of all claims of individual members of the class).

12

Next, the Court should certify a class of inmates with caution being mindful of the fact that it is all too easy for one inmate with some purported knowledge of the law to persuade others to join a complaint, whether or not it is in the best interests of the others to do so.  See Swenson, 2006 U.S. Dist. LEXIS 5784, at *5-6.

In addition to these basic reasons, there are other considerations cautioning against certification of Plaintiffs' putative class.  For instance, none of Plaintiffs could act as a "lead plaintiff" since it was long established that "a prisoner proceeding pro se may not seek relief on behalf of his fellow inmates."  Alexander v. New Jersey State Parole Board, 160 Fed. Appx. 249, 249 n.1 (3d Cir. 2005) (citing Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant . . . to represent his fellow inmates in a class action")).  The rationale for this prohibition is derivative from the language of Rule 23(a)(4) which requires that the class representative have the capacity to fairly and adequately protect interests of class members, and an inmate, a lay person subject to being transferred to another corrections facility at any time, cannot, by definition, adequately and fairly represent other incarcerated individuals.  See Awala v. N.J. Dep't of Corr., 2005 U.S. Dist. LEXIS 18426 (D.N.J. Aug. 23, 2005), appeal dismissed, 2007 U.S. App. LEXIS 2094 (3d Cir. Jan. 31, 2007); see also Laird v. Tatum, 408 U.S. 1 (1972); Valley Forge Christian College v.

13

Americans United for Separation of Church & State, 454 U.S. 464,
482 (1982); Hummer v. Dalton, 657 F.2d 621, 625-26 (4th Cir. 1981)
(a prisoner cannot act as a "knight-errant" for others); accord
McNeil v. Guthrie, 945 F.2d 1163, 1164 & nn.1-2 (10th Cir. 1991) (a
prisoner lacks standing to raise any claims of others regarding the
class action); accord Booker v. Powers, 2007 U.S. Dist. LEXIS
12349, at *5 (E.D. Cal. Feb. 8, 2007) (same).

        Jail populations are notably transitory. See Wasko, 2006 U.S.
Dist. LEXIS 22907; Swenson, 2006 U.S. Dist. LEXIS 5784.    For
instance, one of the named Plaintiffs in the action, Ramazan
Zuberi, was released from confinement and left Avenel since
Plaintiffs' submission of their Complaint. See Docket Entry No. 4.
In view of the above-discussed reasons, none of Plaintiffs, Glenn
included, qualifies as a "lead" plaintiff under Rule 23.[5]    Accord
Ray v. Robertson, 05-2904 (S. Car. Dec. 21, 2005) (R. Bryan

---

[5]

    Moreover, with respect to certain claims asserting what
Plaintiffs seem to qualify as infringements upon the rights of non-
prisoners, see, e.g., Docket Entry No. 1, at 75 (challenging
"requirements that minor children [visiting the inmates] be
registered on visit cards," "prohibition against [civilian]
visitors from [assembling together with inmates-friends of the
visited inmate]" or "restriction on the movement of civilian
staff"), Plaintiffs, Glenn included, simply do not have standing to
sue, regardless of their inmate status and regardless of the
validity or invalidity of the claims of the allegedly injured
civilians.    This prohibition ensues from Plaintiffs' failure to
state the factual basis for prosecuting these claims jus tertii.
See Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990) (discussing
the "next friend" doctrine); DeVetsco v. Horn, 53 F.3d 24, 27 (3d
Cir. 1995); accord Coalition of Clergy v. Bush, 310 F.3d 1153,
1157-59 (9th Cir. 2002) (collecting jus tertii cases).

Harwell, J.) (discussing non-certificability of a prisoners' class ridden with the problems analogous to those present in Plaintiffs' putative class).

In addition, there are two important considerations cautioning against certification of Plaintiff's putative class. The first, and the most obvious one, ensues from the affirmative defense of exhaustion of administrative remedies, see Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002), which, within parameters of a state correctional facility located in the State of New Jersey, usually means a factual determination resolvable through the mode of motion for summary judgement filed by Defendants with respect to each and every individual Plaintiff. Therefore, any certification of Plaintiffs' class prior to establishing claims surviving Defendants' summary judgement challenges is, by definition, premature. See Fed. R. Civ. P. 23(c)(1)(A) ("When a person sues or is sued as a representative of a class, the court must--at an early practicable time--determine by order whether to certify the action as a class action") (emphasis supplied).

The second concern ensues from the fact that the Prisoner Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996), imposes severe consequences on prisoners who file frivolous suits. In 1996, when Congress enacted the PLRA, Congress's purpose was "primarily to

15

curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants. Moreover, the PRLA, in an effort to halt the filing of meritless inmate litigation, enacted what is commonly referred to as the "three strikes" provision. Codified at 28 U.S.C. § 1915(g), the "three strikes" rule provides that an inmate who has had three prior actions or appeals dismissed as frivolous, malicious, or for failing to state a viable claim may not proceed in a civil action in forma pauperis "unless the prisoner is in imminent danger of serious physical injury."[6]  See 28 U.S.C. § 1915(g), and Abdul-Akbar v. McKelvie, 239 F.3d 307, 312 (3d Cir. 2001) (en banc). Since prisoners whose names are added to group complaints may find that they have lost their right to file

---

[6]

The "imminent danger" exception to § 1915(g)'s "three strikes" rule is construed narrowly and available only "for genuine emergencies," where "time is pressing" and "a threat ... is real and proximate." Lewis vs. Sullivan, 279 F.3d 526, 531 (7th Cir.2002). Moreover, "[i]mminent danger" is assessed not at the time of the alleged incident, but rather at the time the complaint is filed. See Abdul-Akbar, 239 F.3d at 312. Therefore, very few complaints meet the "imminent danger" exception.

lawsuits without prepayment of the entire filing fee, even though they are unaware of much if not all of the claims of the complaints they have joined, it is an obligation of this Court to postpone certification of a class until the point when the Court can fully satisfy itself in knowing that (1) each plaintiff actually wishes to file an action rather than being peer-pressured or bullied into the suit by more influential inmates, or by an inmate committee exercising certain powers,[7] and (2) each plaintiff had a fair opportunity to articulate to the Court the wrongs that the plaintiff, on his or her own, believes (s)he actually suffered. That way, the Court can ensure that no Plaintiff would eventually regret taking part in the instant action.[8] See Fed. R. Civ. P. 23(c)(1)(A) ("When a person sues or is sued as a representative of

---

[7]

The Court notices, in passing, that an act of peer pressure or coercion might be conducted by influential inmates in sincere belief that such actions are justified by some "common good." This Court, however, has no interest in ensuring the success of what an inmates committee might perceive as the inmates' common good cause: this Court's obligation is to ensure that every inmate aggrieved by a wrongful action of prison administrators has a fair opportunity to present all his or her grievances to this Court.

[8]

In that respect, this Court is gravely concerned with Glenn's suggestion to "slaughter" the inconvenient claims of Hispanic inmates and those inmates whose medical treatment was allegedly unduly delayed, all in order to preserve the ability of Plaintiffs to proceed as a class. See See Docket Entry No. 7-3, at 17. If these "inconvenient" claims are actionable, financially strapped Plaintiffs aggrieved by these wrongs may be unable to obtain any relief at a later point as a result of class action that (1) discarded their claims in the name of uniformity of causes of action, and (2) immediately--or eventually--triggered the "three strikes" rule.

17

a class, the court must--at an early *practicable time*--determine by order whether to certify the action as a class action") (emphasis supplied).

Finally, this Court is deeply concerned with Glenn's assertion that no separate trial on the issue of monetary damages due to each Plaintiff should be needed in the event the class is certified and prevails on the issue of liability since Glenn (and, perhaps, some members of the Inmate Resident Committee chaired by Glenn) already decided which causes of action qualify for monetary damages and came up with a "formulaic distribution" scheme allocating the monies to various Plaintiffs *as Glenn sees proper*.  See Docket Entry 7-4, at 6-10.  Plaintiffs cannot contract among themselves as to what causes of action provide grounds to monetary damages, same as they cannot decide how to divvy the monies obtained as a legal remedy.  Section 1983 of Title 42, under which the Complaint has been submitted, does allow for an award of damages, but *only* for those causes and *only* to those plaintiffs and *only* in such amount as a jury or other trier of fact may reasonably find, based on the evidence.  See, e.g., Memphis Community School Dist. v. Stachura, 477 U.S. 299; Webb v. City of Chester, 813 F.2d 824, 836 (7th Cir. 1987); accord Steering Comm. v. Exxon Mobil Corp., 461 F.3d 598 (5th Cir. 2006)(a formulaic distributory scheme could be chosen solely by the trier of fact on the basis of evidence determined credible by the trier of fact); Transkaryotic Therapies, Inc. Sec.

18

Litig., 2005 U.S. Dist. LEXIS 29656 (D. Mass. Nov. 28, 2005) (same).

Consequently, this Court finds Glenn's legally unwarranted suggestion to forfeit, ex ante, all potential legal proceedings with respect to determination of damages suffered by each Plaintiff of grave concern and believes it to be an indication that individual Plaintiffs involved in this action might have been unduly coerced into limited causes of action and limited remedies. For the foregoing reasons and, in addition, for the reasons stated in this Court's January Order, this Court denies Glenn's Motion.

B.   **The Complaint, Read in Light Of Glenn's Motion, Does Not Provide Basis for Certification of Plaintiffs' Putative Class**

In addition, the facts stated in Glenn's Motion advocate against certification of Plaintiffs' putative class.

According to Glenn's Motion, the Court erroneously denied certification of Plaintiffs' putative class by misreading the Complaint as asserting that (1) certain Plaintiffs suffered such unique injury as impotence (which, had it been true, would require individualized determination of damages), and (2) while certain Plaintiffs are criminally committed and serve their term of imprisonment, other Plaintiffs completed their terms of imprisonment and are civilly committed (which, had it been true, would require application of different legal standards to the claims of these two groups). See Docket Entry No. 7-3, at 5-6;

19

Docket Entry 7-4, at 6, 10, 17.  Glenn concludes that, since the Court "has overlooked [these key points, the Court failed to properly] digest a 225 page [C]omplaint of 436 paragraphs that [were] perhaps inartfully written [by] pro se . . . litigants."[9] Docket Entry No. 7-4, at 8.  Reading these points into Plaintiffs' Complaint, this Court finds that, for the reasons stated below, the Complaint provides no grounds for certification of Plaintiff's putative class.

The 225 pages and 436 paragraphs of the Complaint could be roughly subdivided into five categories, intermeshed according to a scheme this Court fails to either detect or comprehend: (1) extensive listing of parties; (2) extensive detours into political and social underpinnings and legal development of New Jersey state law, as well as developmental history of Avenel as a correctional and treatment facility; (3) general accusatory statements occasionally laced by an oblivious statement of fact; (4) generic legal claims; and (5) statements of facts.  See generally, Docket Entry No. 1.

---

[9]

This Court finds it hard to reconcile Glenn's numerous references to Plaintiffs' complete lack of legal savvy with Glenn's repeated statements that "[t]he Complaint was drafted by members of the [Avenel] Inmate Resident Committee . . . and the [Inmate Resident Committee] Legal Subcommittee and other [Avenel] residents with litigation experience."  Docket Entry No. 7-4, at 3, 5.

1.   Standard of Review for _Sua_ _Sponte_ Dismissal

In determining the sufficiency of a complaint, the Court must be mindful to construct the _facts_ stated in the complaint liberally in favor of the plaintiff.   See   Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

Consequently, a complaint is frivolous and subject to dismissal if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 325, 328 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  Therefore, liberally construing the facts stated in the complaint, the Court would proceed it past sua sponte dismissal if the facts stated in the complaint could be interpreted as a basis for a valid legal claim.  Conversely, the Court would not "imply" the facts into the complaint in order to create a factual basis for plaintiff's legal claims or conclusions.

Plaintiffs' pro se status or application for certification of class does not change this rule.  Even within parameters of a class

21

action, the concept of facts is qualitatively different from that of legal claims. The facts are "'the who, what, when, where, and how: the first paragraph of any newspaper story.'" <u>Advanta Corp. Sec. Litig.</u>, 180 F.3d 525, 534 (3d Cir. 1999) (quoting <u>DiLeo v. Ernst & Young</u>, 901 F.2d 624, 627 (7th Cir. 1990)). Thus, a plaintiff stating the facts that cannot serve as a basis for a valid legal claim or resorting to bald legal conclusions instead of facts "can plead himself out of court." <u>Jackson v. Marion County</u>, 66 F.3d 151, 153 (7th Cir.1995). Consequently, all Plaintiffs' statements short of those that include *factual assertions supporting inference of a potentially viable claim* under 42 U.S.C. § 1983 are subject to <u>sua</u> <u>sponte</u> dismissal and, by definition, cannot serve as a valid basis for certification of a class.


### 2.   An Actionable Claim Under § 1983

Section 1983 of Title 42 of the United States Code authorizes a person to seek redress for a violation of his federal civil rights by a person who was acting under color of state law. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) that he or she was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States (rather than the legal rights secured by state law provisions); and (2) that the challenged conduct was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.J. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

    a.   BALD LEGAL CLAIMS STATED BY PLAINTIFFS

While Plaintiffs commonly refer to various state law provisions,[10] the Civil Rights Act of 1964 and First, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, see, e.g.,[11] Plaintiffs' legal claim of choice appears to be based on alleged Defendants' "violations of the state and federal Racketeer

---

[10]

Plaintiffs allege that Defendants wrongfully applied New Jersey state statutes in violation of "rehabilitative philosophy" that Plaintiffs read into these provisions. However, since Section 1983 of Title 42 of the United States Code authorizes a person to seek redress only for a violation of his *federal* civil rights, see West, 487 U.S. at 48; Adickes, 398 U.S. at 152; Sample, 885 F.2d at 1107, Plaintiffs' state law claims are not actionable under the Section and, absent grounds for supplemental jurisdiction, cannot be entertained by a federal court.

[11]

While, as discussed below, many legal claims made by Plaintiffs are erroneous, this Court is bewildered by Plaintiffs' reference to the Sixth Amendment since no statement made by Plaintiffs could be even remotely traced to the Amendment.

23

Influenced and Corrupt Organization . . . Act" (hereinafter "RICO").[12] See Docket Entry No. 1, at 171-86; Docket Entry No. 7-8.

The federal RICO provision, 18 U.S.C. §§ 1961-1968, allows for a private civil action to recover treble damages for injuries resulting from a defendant's "racketeering activities" in violation of RICO's substantive provisions.[13] See 18 U.S.C. § 1964(c). To allege successfully a violation under either of these subsections, a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity as well as an injury resulting from the conduct constituting a violation. An associated-in-fact enterprise means an ongoing organization with established duties, see United States v. Turkette, 452 U.S. 576, 583 (1981), and has to be defined "separate and apart from the pattern of activity in which it engages." United States v. Riccobene, 709 F.2d 214, 222 (3d Cir. 1983). Moreover, the alleged racketeering activity is based on fraud as the predicate act, the heightened pleading requirement of Fed. R. Civ. P. 9(b) applies, thus mandating Plaintiffs to state "the circumstances constituting

---

[12]

This Court is not entirely clear as to Plaintiffs' fascination with RICO. It is, however, conceivable that the threatening imprimatur of a "RICO charge" and treble damages are the source of such fascination.

[13]

Under one such substantive provision, it is unlawful to conduct an enterprise through a pattern of racketeering activities. See 18 U.S.C. § 1962(c). Under another, it is unlawful to invest income derived from a pattern of racketeering activities. See 18 U.S.C. § 1962(a).

24

fraud . . . with particularity." Fed. R. Civ. P. 9(b); accord, Bonavitacola Elec. Contr., Inc. v. Boro Developers, Inc., 87 Fed. Appx. 227, 231 (3d Cir. 2003) (citing Warden v. McLelland, 288 F.3d 105, 114 & n.6 (3d Cir. 2002)).

No statement made in Plaintiffs' Complaint indicates that Defendants could be liable under the RICO provision. While Plaintiffs indeed allege fraudulent conduct by Defendants, Plaintiff's Complaint is void of any allegations indicating the presence of an enterprise distinct from the alleged fraud, and has no single fact asserting fraud with particularity. See Docket Entry No. 1, at 171-86. While stating numerous legal conclusions and even Plaintiffs' conjecture as to how the number of fraudulent contacts and the amount of money fraudulently obtained by Defendants could hypothetically be calculated, Plaintiffs provide this Court neither with an indication of how the alleged enterprise was structured nor with a single fact based on actual knowledge that Defendants committed the alleged predicate acts. See id. Plaintiffs' sole "proof" is a self-serving deducement that could be effectively reduced to the following claim: "Defendants did not provide to Plaintiffs all the services that Plaintiffs believe to be entitled to, therefore, Defendants must have been an enterprise engaged in fraudulent RICO activities." See id. Such allegations, however, do not indicate that Plaintiffs might have a valid RICO claim.

25

Moreover, even if this Court overlooked this key shortcoming and allowed Plaintiffs to amend their Complaint, such amendment would not redeem Plaintiffs' RICO claim since Plaintiffs have no standing to advance this allegation. See Docket Entry No. 1, at 173 (expressly stating that the entity allegedly defrauded by Defendants' RICO activities is *the State of New Jersey*). Since the State of New Jersey was the allegedly defrauded party (and in no way designated Plaintiffs to litigate the alleged RICO claim on behalf of the State), Plaintiffs cannot bring this claim. See Anza v. Ideal Steel Supply Corp., 126 S. Ct. 1991 (2006). Moreover, since Plaintiffs expressly state that all contractual activity took place between Defendants and the State or the Department of Corrections as an arm of the State, Plaintiff cannot allege facts in support of Plaintiffs' claim of reliance,[14] an indispensable element to establish standing in RICO actions. See Bonavitacola Elec. Contr., Inc. v. Boro Developers, Inc., 87 Fed. Appx. 227 (3d Cir. 2003), cert. denied, 543 U.S. 818 (2004). Therefore, Plaintiffs have no valid RICO claim against Defendants.

---

[14]

Indeed, Plaintiffs did not choose to "check into" Avenel for rehabilitation in "reliance" on obtaining certain medical treatment as if Avenel was a rehabilitation sanatorium. As Glenn's Motion clarifies, all Plaintiffs were criminally sentenced and assigned to Avenel regardless of whether or not they were approving of the accommodations available. See Wilkinson v. Austin, 545 U.S. 209 (2005) (the Constitution does not give rise to a liberty interest in the choice of conditions of confinement); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montayne v. Haymes, 427 U.S. 236, 243 (1976).

26

Plaintiffs' other claims styled in the form of legal conclusions fair no better. While Plaintiffs assert such claims as breach of criminal plea agreement and wrongful imprisonment, these claims cannot be pursued in a civil rights action prior to having prisoner's criminal conviction overturned or invalidated in the state courts, or called into question by the issuance of a writ of habeas corpus, regardless of whether or not the remedy sought is an injunctive relief or monetary damages.[15]   See Heck v. Humphrey, 512 U.S. 477 (1994); Preiser v. Rodriquez, 411 U.S. 475 (1973); Dunn v. Colleran, 247 F.3d 450 (3d Cir. 2001);   Brown v. Fauver, 819 F.2d 395 (3d Cir. 1987).

Since Plaintiffs' claims styled in the form of legal conclusions appear to have no merit, these claims cannot provide this Court with a valid reason for certification of a class or reconsideration of the Court's January Order.

---

[15]

Curiously enough, Plaintiffs do not name their prosecutors, that is, the entities with whom the plea agreements were reached, as defendants. Rather, Plaintiffs assert that Defendants wronged Plaintiffs by not providing Plaintiffs with accommodations which Plaintiffs were expecting when Plaintiffs accepted their pleas. See Docket Entry No. 1, at 206-07. Therefore, even if Plaintiffs' action was not barred by lack of invalidation of conviction in the state court or by a writ, Plaintiffs' contractual claim would still be meritless since Defendants' alleged contracts with New Jersey Department of Corrections were, by definition, executed independently of Plaintiffs' alleged plea agreements with Plaintiffs' prosecutors. Hence, even if Defendants actually failed to perform on their contracts, Plaintiffs, non-parties to Defendants' contracts, have no standing to sue for this alleged non-performance.

b.    FACTUAL ALLEGATIONS STATED BY PLAINTIFFS' CLASS

It appears that, in support of their Eighth and Fourteenth
Amendments claims, Plaintiffs state numerous factual assertions
applicable to the putative class in its entirety.  The exact number
of these assertions is unclear, especially in view of numerous
repetitions.  See generally, Docket Entry No. 1.  However, the most
notable example of these factual assertions is the compilation of
fifty such statements designated by letters running from "a" to
"ww."  See id., at 72-79.  While recital of all these claims in the
instant Opinion is neither feasible nor necessary, the Court notes
such astonishing claims with respect to violations of Plaintiffs'
constitutional rights as: unpleasant interferences with Plaintiffs'
busy recreational schedule by occasional half an hour delays in
Plaintiffs' movement through the facility, or by Plaintiffs' need
to check back rented racquetball rackets and racket balls, see id.
at 72-74; Plaintiffs' apparently imperfect entertainment resulting
from Avenel's bans on private CDs and CD players, elimination of
brass instruments from the music program, lack of fantasy game
cards and T-shirt hobby program, and an irritating restriction on
the use of pliers and screwdrivers, see id. at 73-74, 76;
Plaintiffs' lack of satisfaction from physical exercises that do
not include boxing equipment and rubber horseshoes to be thrown in
the yard, see id.; Plaintiffs' housekeeping hardships resulting
from the prohibition on the use of non-see-through bags and irons,

28

see id. at 74; Plaintiffs' aesthetical hardships resulting from Avenel's construction of cages for storage of tools, see id. at 75; Plaintiffs' annoyance with heightening of security, as well as with the need to bear with increased number of custodial staff and supervisors, or with custodial escort of the inmates who are in need of medical attention, see id., at 75; and Plaintiffs' imperfect appearances due to Plaintiffs' inability to use suntan lotion in the yard. See id. at 77. All such claims have no merit. See Hudson v. McMillian, 503 U.S. 1, 9 (1992); Wilson v. Seiter, 501 U.S. 294, 298 (1991); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). Contrary to Plaintiffs' apparent preferences, the Constitution "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Prison officials must merely ensure that inmates receive minimally adequate food, clothing, shelter and medical care, plus must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). Plaintiffs' above-cited and other multiple Eighth Amendment claims tried this Court's patience and explored the boundaries of Rule 11. See, e.g., Docket Entry No. 1, at 61, 63, 68-69 (asserting, inter alia, that Plaintiffs were aggrieved, in constitutional proportions, by the fact that one therapist serviced about 38 inmates rather than 25, that group therapy treatments had to be limited to the hours officially allocated rather than those

29

elected by Plaintiffs, that some Plaintiffs were forced to eventually vacate their private quarters and bear sleeping on double bunks, or that Plaintiffs had to tolerate rude or threatening comments of the officers).[16]  Compare Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("Society does not expect that prisoners will have unqualified access to health care"); Gatewood v. Hendrick, 368 F.2d 179 (3d Cir. 1966), cert. denied, 386 U.S. 925 (1967) (prisoner who did not claim that he was denied any medical care but rather that he received only inadequate medical care, and gave no indication that he sustained serious physical

---

[16]

The Court is particularly troubled by Plaintiffs' assertion that Plaintiffs' rights were unduly infringed by Avenel's housing of state prisoners who were not convicted sex offenders since, according to Plaintiffs, these inmates unduly encroached on Plaintiffs' private quarters and choice of jobs, and even created traffic congestion displeasing Plaintiffs.  See Docket Entry No. 70-72.  Plaintiffs, same as all other inmates, have no constitutional right to rehabilitation, education, or jobs.  See Rhodes v. Chapman, 452 U.S. 337, 348 (1981); Canterino v. Wilson, 869 F.2d 948, 952-54 (6th Cir. 1989).  Moreover, other state prisoners have the same constitutional rights as Plaintiffs to adequate food, clothing, shelter and medical care.  See Farmer, 511 U.S. at 832.  Plaintiffs' contention that Plaintiffs, somehow, constitutionally deserve accommodations better than those provided to other state inmates has a disturbing Orwellian implication that Plaintiffs are "more equal than others," and fails to factor in Plaintiffs' status of convicted inmates.  See, e.g., <<https://www6.state.nj.us/DOC_Inmate/details?x=1029987&n=0>> (for instance, Glenn's public criminal record indicates, inter alia, convictions of aggravated sexual assaults, aggravated assault, terroristic threats, criminal restrain, robbery, resisting arrest, eluding police officer, possession of weapon for unlawful purpose and conspiracy).  Clearly, an inmate cannot become entitled to private quarters and entertainment or employ of his choice by adding to his crimes of robbery and unlawful possession of a weapon a violent sexual assault.  Finding otherwise would be indeed an anomalous encouragement of criminal sexually violent behavior.

injury as result of alleged inadequate treatment, failed to state
claim for relief); see also Alsina-Ortiz v. Laboy, 400 F.3d 77 (1st
Cir. 2005)(a doctor's failure to respond to certain request for
services by the inmate, in context of the doctor's continued and
regular services, did not deprive the inmate of any meaningful
treatment); Lavender v. Lampert, 242 F. Supp. 2d 821 (D. Or. 2002)
(interpreting  Estelle v. Gamble, 429 U.S. 97, 104 (1976), and
spelling out that only the presence of a medical condition that
significantly affects an individual's daily activities, or the
existence of chronic and substantial pain qualifies as "serious
medical need"); McNeil v. Redman, 21 F. Supp. 2d 884 (C.D. Ill.
1998) (an inmate has no constitutional right to see a doctor on
demand); see also North v. White, 152 Fed. Appx. 111 (3d Cir.
2005)(finding no Eighth Amendment violation where, due to a
temporary  influx  of  inmates,  the  facility  resorted  to
triple-celling of one-third of inmates, since the facility was
otherwise well maintained; and ventilation, light, sanitation and
food met applicable minimal standards); Hubbard v. Taylor, 399 F.3d
150 (3d Cir. 2005) (conducting a nearly-identical inquiry with
respect to pre-trial detainees under the Due Process Clause and
finding that two-to-seven-months of triple-celling in a cell
designed for one did not constitute a violation, and relying on
Bell v. Wolfish, 441 U.S. 520 (1979), the case where no violation
was found with respect to 30-to-60-days confinement of two inmates

31

in a cell designed for one); accord Stepney v. Gilliard, 2005 U.S.
Dist. LEXIS 31889, at *19 (N.J.D. Dec. 8, 2005) ("[V]erbal
harassment and taunting is neither 'sufficiently serious' nor 'an
unnecessary and wanton infliction of pain' under the common meaning
of those terms.  'Verbal harassment or profanity alone . . . no
matter how inappropriate, unprofessional, or reprehensible it might
seem,' does not constitute the violation of any federally protected
right and therefore is not actionable under [Section] 1983")
(quoting Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998),
and citing Collins v. Graham, 377 F. Supp. 2d 241, 244 (D. Me.
2005)); see also Robinson v. Taylor, 2005 U.S. Dist. LEXIS 20951,
at *8-9 (D. Del. Sept. 26, 2005) ("[M]ere verbal harassment does
not give rise to a constitutional violation[; even if it is]
inexcusable and offensive, [it] do[es] not establish liability
under section 1983) (quoting McBride v. Deer, 240 F.3d 1287, 1291
n.3 (10th Cir. 2001) and citing Moore v. Morris, 116 Fed. App'x
203, 205 (10th Cir. 2004); Freeman v. Arpaio, 125 F.3d 732, 738
(9th Cir. 1997); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir.
1979)); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185,
187-89 (D.N.J. 1993)); Abuhouran v. Acker, 2005 U.S. Dist. LEXIS
12864, at *15 (E.D. Pa. June 29, 2005) ("It is well established .
. . that . . . verbal harassment, . . . standing alone, do[es] not
state a constitutional claim") (citing Dewalt v. Carter, 224 F.3d
607, 612 (7th Cir. 1999);  Williams v. Bramer, 180 F.3d 699, 706

32

(5th Cir. 1999); Maclean v. Secor, 876 F. Supp. 695, 698 (E.D. Pa. 1995)); Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979) (dismissing prisoner's claim that defendant laughed at prisoner and threatened to hang him).

In sum, the factual allegations stated in the Complaint with respect to the claims applying to the entire putative class appear to have only one predominant feature, namely, that Plaintiffs' putative class has no claim. See generally, Docket Entry No. 1. Therefore, Plaintiffs' Complaint, before and after being read in light of Glenn's Motion, provides this Court with no valid basis for certification of Plaintiffs' putative class or reconsideration of the January Order.

### c.   FACTUAL ALLEGATIONS BY INDIVIDUAL PLAINTIFFS

While the statements made in the Complaint indicate that the Plaintiffs' putative class does not seem to have common and/or predominant umbrella claims applicable to the entire class, certain statements made in the Complaint indicate that individual Plaintiffs--or other inmates at Avenel--might have viable legal claims.[17]    See, e.g., Docket Entry No. 1, at 97-126 (providing

17

This Court stresses that no reference to examples of potentially viable claims made in the instant Opinion guarantees the validity of the claims referenced to or provides an exhaustive list of potentially viable claims. All references are made solely for the purpose of highlighting the fact that, while the Complaint, as drafted, indicates that the putative class appears to have no
(continued...)

33

numerous factual allegations unique to particular inmates).
However, these claims based on incidents particular to each inmate
cannot be "borrowed" by the putative class. These claims are: (1)
unique to those inmates who might have been injured by the
allegedly wrongful conduct, and (2) "non-transferable" to the named
Plaintiffs and/or to Plaintiffs' putative class under the "case or
controversy" requirement set forth in the Article III of
Constitution. See Whitmore v. Arkansas, 495 U.S. 149, 154-55
(1990). Therefore, the likely presence of viable claims by
individual inmates at Avenel does not provide this Court with valid
grounds for certification of Plaintiffs' putative class.
Conversely, it advocates against such certification. See Fed. R.
Civ. P. 23.

---

[17](...continued)
valid claim, numerous inmates might have viable claims that they
could advance on their own, and the Court would evaluate the
validity of each individual inmate's claims on the basis of facts
related to that particular inmate. For instance, the Complaint
alleges that inmates Orr, Hersey or Nunez suffered from retaliatory
acts after filing administrative complaints alleging sexual
assaults or complaining about infringement upon their Free Exercise
Clause rights. See Docket Entry No. 1, at 99-100. However,
neither Orr, nor Hersey or Nunez were named as Plaintiffs in this
action, see id., caption and at 25-28, and nothing in the language
of the Complaint indicates that named Plaintiffs suffered from the
same retaliatory acts. See generally, Docket Entry No. 1.
Therefore, the claims of inmates like Orr, Hersey or Nunez might be
viable, but neither Glenn nor the other named Plaintiffs or the
entire putative class may share in these individual claims and/or
remedies potentially due.

CONCLUSION

While Glenn's Motion asserts that this Court misread Plaintiffs' Complaint, it appears that Glenn misread this Court's January Order as indicating that the Complaint provided a valid basis for certification of Plaintiffs' putative class, subject to having a few "inconvenient" claims deleted. Same as the instant Opinion, the January Order highlighted only a few insufficiencies of the Complaint for the purposes of class certification, since a detailed evaluation of all shortcomings of the Complaint, even if feasible, would be too voluminous and would certainly unduly prey on the Court's limited resources without serving any valid purpose.

The clarifications contained in Glenn's Motion indicate that the basis for certification of Plaintiffs' putative class is *even more deficient* than that originally perceived by the Court. Therefore, The Court's January Order was proper. Glenn's disagreement with this Court's January order signifies nothing more than Glenn's disliking of the current legal regime and this Court's conclusions. Such disagreement and/or disliking, however, cannot serve as a valid reason to grant Glenn's Motion. See Bermingham, 820 F. Supp. at 859. Therefore, Glenn's Motion will be denied.

Next, in view of the possibility that the named Plaintiffs directed by this Court's January Order to submit for filing their individual complaints together with proper filing fees or complete in forma pauperis applications might have been mislead into *not*

35

submitting their individual complaints by Glenn's filing of Glenn's Motion (or by peer-pressure ensuing from the hope that Glenn's Motion might be granted and fear that the success of Glenn's Motion might be diminished by filings of individual complaints), this Court will grant all named Plaintiffs an extension of time to submit their individual complaints together with proper filing fees or complete in forma pauperis applications for fifteen days from the date of entry of this Opinion and accompanying Order, in order to preserve those claims of the named Plaintiffs the viability of which might be time sensitive.

Finally, since it appears that the Clerk's retention of the instant action and consequential preservation of the names of all Plaintiffs on the docket sheet have--or might have--been misinterpreted by Plaintiffs as an indication that the civil case index number assigned to the instant action is still reflecting an application by all named Plaintiffs rather than by Glenn solely, this Court will direct the Clerk to conclusively terminate the instant action and assign a new civil case index number to Glenn for the purposes of treating Glenn's individual application in the fashion stated in the January Order and identically to the individual applications of all other named Plaintiffs.

An appropriate Order accompanies this Opinion.


_____

**PETER G. SHERIDAN**
United States District Judge


Dated: March 20, 2007

37